THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GERMÁN GUIDO MAYA, Defendant and Appellant.

No. CR-63-388.        Decided September 23, 1964.

*Celedonio Medín Lozada* for appellant. *J. B. Fernández Badillo,
Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant
Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge
of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the
Court.

The district attorney charged appellant with an offense
of embezzlement consisting in that on May 21, 1962, in
Cabo Rojo, P.R., and while acting as salesman for "American Home Sewing Center, Inc.," he fraudulently appropriated to himself the sum of $160 which was delivered to him
by a customer in full settlement of a conditional sales contract of a sewing machine, which sum belonged to the said
"American Home Sewing Center, Inc."

The corresponding trial was held before a jury. Defendant alleged that although it was true that he had collected
the aforesaid sum, he had lost it when his wallet was misplaced on a business trip of the corporation which he made
to Lares and neighboring towns.

It appears from the record that after the corporation
learned that defendant had received the said sum of money,
without having repaid the same within the period granted
therefor, it dismissed him from employment, payment of
accumulated vacation amounting to $142 having been left
pending. It also appears from the prosecution evidence that
when defendant claimed his vacation pay, he said to the
sales supervisor of the corporation: "Look, let's do one thing;
you pay me my vacation so I can pay that." The corporation
issued a check for the amount of vacation and delivered it

to the Labor Department. At the time of the trial, that check was still on deposit in that department.

During the hearing of the case the district attorney presented in evidence, and it was admitted, a sworn statement given by defendant before district attorney Luis Ángel Limeres on June 29, 1962. The defense stipulated that that statement had been wilfully and voluntarily given. The jury found defendant guilty and he was sentenced to serve from one to five years' imprisonment in the penitentiary.

On appeal, he assigns the commission of several errors, the first of which refers to certain instructions which the judge transmitted to the jury.

In the sworn statement given before district attorney Limeres defendant admitted that on May 21, 1962, he collected the sum of $160 from Joaquina Iglesias and gave her a receipt for that amount. He stated further that he had not delivered that amount to American Home Sewing Center, Inc. When the district attorney asked him what happened to that money, he answered: "That day was Monday; it was early in the week. I used to work all over the Island. I carry large sums of money during the whole week. I lost the wallet on route from Cabo Rojo to Lares. I stayed two days in Lares. The district attorney asked him: 'Did you at any time explain to someone of that firm what had happened to you with the money?' Defendant answered: 'No, sir. The day it was found out through the collector, I explained the occurrence to him.' The district attorney asked: 'To which collector do you refer?—To Mr. Oliveras.'" He further testified that since May 21 and until he spoke with Oliveras he did not visit the firm in Ponce, and that he spoke with René Castelló "after the collector had already gone there. I have explained the occurrence." Lastly, he told the district attorney that that was all he had to declare.

Before summing up that statement, the judge said to the jury: "In the summary of the evidence which we are mak-

ing to you, of the prosecution evidence which we are making to you, through an involuntary error I had forgotten to sum up part of the prosecution evidence consisting in defendant's statement, *the defendant's alleged confession* given on June 29, 1962, before the district attorney who investigated these facts, Luis Ángel Limeres, which statement was admitted in evidence . . . without objection by the defense, the defense admitting that it was freely and voluntarily given." (Italics ours.)

He then transmitted the following instructions in connection with that statement:

"Defendant's statement is proof in the case, and you should consider it also in deciding this case as additional evidence in the case. I shall give you at the proper time *pertinent instructions on how to consider a defendant's statement.* [Tr. Ev. 68.] [Italics ours.]

"·    ·    ·    ·    ·    ·    ·    ·

"We have seen, however, that the district attorney presented a sworn statement given by defendant in the course of the investigation of these facts. *It is the so-called confession to which we have referred in this case.* On that question, I wish to instruct you as follows: a confession in criminal law is an admission or statement made by a person accused of a crime *to the effect that he is guilty thereof.* An admission is distinguishable from a confession in the fact that the term 'admission' in criminal law refers to questions of fact which do not involve criminal intent, *while a confession is an acknowledgment of guilt,* statements made by the defendant as some time *which involve an admission of his guilt,* and are admissible in evidence if it does not appear that they were obtained by threat, promise, but were voluntarily made without coercion of any kind. In order for an extrajudicial confession, namely, *a confession which is not made in court, to be admissible, it is necessary to prove that it was voluntarily given,* and it is always incumbent on the district attorney to prove, as a matter of fact, the voluntary character of that confession.

"In this case the district attorney sought to prove, and the defense admitted it, *that it was freely and voluntarily given and*

*acquiesced in its admission in evidence, and that is evidence.*

"The rule that a confession should be considered in its entirety, namely, in toto, that is, in full, does not bind the jury to give the same credit to each part thereof. The jury may believe that part which in their opinion is worthy of credit and reject any portion which does not deserve credit. The entire confession should be carefully examined, and, taking into consideration all the circumstances of the case, the jury should decide which part to accept and which part to reject.

"In a confession, the exculpatory matter should be treated like any other evidence, the jury being at liberty to believe it or reject it, as well as the rest of the matter contained in the confession.

"The jury is not under the duty to accept that the facts occurred in the *exact manner recited in defendant's confession,* since that would amount to leaving to defendant's discretion the ascertainment of the truth. The jury judges, examines, weighs, and evaluates the entire evidence. *The confession in this case is part of the evidence, and the jury may evaluate it in the light and in connection with the rest of it, and then act in such manner as they may consider just, in accordance with their conscience and law principles."* Tr. Ev. 68, 75–77. (Italics ours.)

■ The defendant specifically "objected" to these instructions and also moved the judge, unsuccessfully, to instruct the jury in the sense that such statement was not a confession.

■ ■ It is evident that the sworn statement given by defendant before district attorney Limeres is not a confession. According to the judge's instructions to the jury, "a confession in criminal law is an admission or statement made by a person accused of a crime to the effect that he is guilty thereof . . . a confession is an acknowledgment of guilt . . . statements made by the defendant at some time which involve an admission of his guilt." In defining the offense of embezzlement, the judge said correctly to the jury that that offense consists of three elements, to wit: (1) that

there exists certain property which is the object of the offense; (2) that such property was entrusted to another person in one of the manners provided by law; and (3) that the person to whom the property was entrusted appropriates it fraudulently to himself.

The first two elements, but not the third, are present in defendant's sworn statement.

■ To instruct the jury that that sworn statement was a confession or, in other words, an admission of guilt, was a gross error.

In his memorandum the Solicitor General strives hard to show that in his instructions the judge did not characterize defendant's sworn statement as a confession. In his argument that the judge labelled it "alleged confession" and "so-called confession rather than a true and legitimate confession," says the Solicitor: "In labelling this statement as an *'alleged confession,'* and afterwards in referring to it as the 'so-called confession referred to in this case,' the purpose of the court was unquestionably to convey to the jury that such statement could or could not be a *true and legitimate confession,* depending on its content. It is for this reason that the judge forthwith proceeded to give instructions on the distinction in law between a *confession* and an admission, and without making any statement in the sense that defendant's statement was a *true confession,* he informed them that the admissibility in evidence of a confession was subject to a showing by the district attorney that it had been freely, spontaneously, and voluntarily given." The Solicitor goes on to argue that the court employed the word "confession" in generic terms to illustrate the manner in which the jury should weight a confession, and how to deal with the exculpatory matter contained therein; and that when the court said "[T]he confession in this case is part of the evidence," it cannot be asserted that that expression constitutes "a *specific* and *particular* reference to

the statement given by defendant-appellant in the case at bar.

We cannot agree with the foregoing reasoning.

From the stenographic record it appears that neither the district attorney nor the defense attorney labelled defendant's statement "the so-called or alleged confession" before the jury. It was the judge who labelled it so.

■ If we follow the sequence of the instructions on defendant's sworn statement, it will be seen that the judge conveyed to the jury his criterion that such statement was a confession. In instructing them that for an extrajudicial confession to be admissible, that is, *"the confession* which is not given in court," it is necessary for the district attorney to prove the voluntary character *"of that confession,"* he says in the same breath: "In this case the district attorney sought to prove, and the defense admitted it, *that it was given* freely and voluntarily, and acquiesced in its admission in evidence." In other words, the judge told the jury that the extrajudicial confession, that which is given out of court, had been freely and voluntarily given, as admitted by the defense. However, the defense never admitted that defendant had confessed extrajudicially. His admission was to the effect that defendant's sworn statement before district attorney Limeres was freely and voluntarily given.

The judge further instructed the jury in the sense that the jury is not under the duty to accept that the facts occurred in the manner stated *"in the confession given by defendant,"* for that would amount to leaving to defendant's discretion the ascertainment of the truth. Then he added: *"The confession in this case is part of the evidence,* and the jury may evaluate it in the light and in connection with the rest of it, and then act in such manner as they may consider just, in accordance with their conscience and law principles."

The judge was not referring, as alleged by the Solicitor, to the principles governing the admission and manner of considering a confession in any case. He expressly referred, on the contrary, to the *"confession in this case,"* namely, the confession which had been admitted in evidence in the prosecution against defendant-appellant. The term "confession" was not therefore employed in generic terms, but was specifically applied to the sworn statement given by defendant.

In *People* v. *Crespo Guerrero, ante,* p. 212, we said: "To instruct the jury, in any case, that a testimony is a confession of the defendant, which in law means that he has admitted or recognized in an absolute manner the essential facts and elements of. the crime with which he is charged, without it being a confession in law, constitutes a serious, reversible error of law. [Citations.]"

We ratify that doctrine at this time, and conclude that the trial court committed the error assigned. We need not discuss the other errors, since the judgment on appeal will be reversed and a new trial ordered.